UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **JOSHUA R. CHILDRESS,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | Civil Action No. 4:21-cv-237-CLS |
| ) | |
| **MICHELLE KING, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Joshua R. Childress commenced this suit pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of Social Security, affirming the decision of an Administrative Law Judge ("ALJ") and, thereby, denying his claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

### I. STANDARDS OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and, whether correct legal standards were applied. *See Lamb v.*

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011) (alteration supplied).

## II. DISCUSSION

Claimant contends that the Commissioner's decision is neither supported by substantial evidence, nor in accordance with applicable legal standards. Specifically, claimant asserts that: (1) the ALJ's description of claimant's residual functional capacity conflicts with the testimony of the vocational expert; (2) the ALJ did not accord proper weight to the opinion of Michael Wood, M.D., and, therefore, improperly discounted the severity of claimant's hernias; (3) and, the decision of the Eleventh Circuit in *Harner v. Social Security Administration*, 38 F.4th 892 (11th Cir. 2022), should be overruled.[1]

### A.   The Residual Functional Capacity Determination

The ALJ found that claimant suffered from the severe impairments of incisional hernia, nonincarcerated supraumbilical hernia, scoliosis, chronic pain disorder, hypertension, morbid obesity, depression, panic disorder, and specific

---

[1] Doc. no. 24 (Plaintiff's Opening Brief), at 2.

learning disorder.[2]  The ALJ further found that those severe impairments and related symptoms significantly limited claimant's ability to perform basic work activities.[3] Accordingly, the ALJ was required to determine claimant's residual functional capacity.  *See* 20 C.F.R. § 404.1520(e).

Following review of claimant's medical records and his testimony during an administrative hearing, the ALJ determined that claimant retained the residual functional capacity to perform light work, with the following limitations: never climb ladders, ropes, or scaffolds; *occasionally* climb ramps and stairs; *occasionally* balance, stoop, crouch, kneel, and crawl; and, avoid all exposure to dangerous moving machine parts and to unprotected heights.[4]  The ALJ further found that claimant can understand, remember, and carry out simple instructions; adapt to routine and infrequent workplace changes; make simple work-related decisions; maintain attention and concentration for two-hour periods; perform jobs that do not require a specific production rate; and, *occasionally* interact with co-workers and the general public.[5]

As claimant correctly points out, that residual functional capacity ("RFC")

---

[2] R. 58.

[3] R. 59.

[4] R. 62 (emphasis supplied).

[5] *Id.*

determination differed from the one initially posed by the ALJ to the vocational expert ("VE") in the following hypothetical question during the administrative hearing conducted on May 24, 2022:

> [P]lease consider an individual of the Claimant's age, education, and work history. The individual can perform a full range of light work, however, the individual should never climb ladders, ropes, or scaffolds,, [and] can *frequently* climb ramps and stairs, [and] balance, stoop, crouch, kneel, and crawl.
>
> The individual should avoid all exposure to dangerous moving machine parts and to unprotected heights, can understand, remember and carry out simple instructions, can adapt to routine and infrequent workplace changes. The individual can maintain attention and concentration for two-hour periods at a time, can make simple, work-related decisions, [and] can perform jobs that do not require a specific production rate.
>
> The individual can have occasional interaction with the general public, and frequent interaction with co-workers.

R. 109-10 (alterations and emphasis supplied). The VE confirmed that, with those limitations, claimant could not perform any of his past work,[6] but there still existed other jobs in the national economy that he could perform. Specifically, the VE testified that claimant could perform the work of a photocopying machine operator, marker, and non-postal mail clerk.[7] The ALJ then modified the hypothetical question to include only *occasional* climbing of ramps and stairs, and *occasional* interaction

---

[6] Claimant's past work included: dishwasher; fast-food worker; short-order cook; forklift operator; stacker; and, semi-truck driver. R. 109.

[7] R. 110.

with co-workers.[8] The VE testified that, with those additional limitations, claimant would be able to perform the job of photocopy machine operator and marker, but the number of mail clerk positions would be reduced by at least thirty percent.[9] The VE opined that claimant also could perform the duties of an inserting machine operator.[10]

Based upon the VE's responses, the ALJ concluded that claimant could perform the requirements of the following occupations: photocopy machine operator, with 17,917 jobs nationally; marker, with 262,683 jobs nationally; non-postal mail clerk, with 55,521 jobs nationally; and, inserting machine operator, with 2,461 jobs nationally. Claimant contends that those findings are in error, because the ALJ's ultimate RFC determination restricted claimant to *occasional* balancing, stooping, crouching, kneeling, and crawling, whereas the hypothetical posed to the VE provided for *frequent* performance of those activities — *i.e.*, the RFC assigned by the ALJ was more restrictive. Claimant asserts that, therefore, the ALJ's finding that claimant could perform other work, considering his RFC, is not supported by substantial evidence. *See* 20 C.F.R. § 404.1520(g).[11]

---

[8] *Id.*

[9] R. 111.

[10] *Id.*

[11] That regulation provides, in relevant part:

> (g) Your impairment(s) must prevent you from making an adjustment to any other work.

Claimant contends that the ALJ's more restrictive RFC precludes claimant from performing the job duties of the occupations identified by the VE during the hearing. As an initial matter, claimant notes that the Dictionary of Occupational Titles ("DOT") code numbers cited by the VE and by the ALJ for the photocopying machine operator job were incorrect. During the hearing, the VE cited "DOT 208.685-027" for that position. However, there is no occupation listed in the DOT that corresponds to that code number. In her decision, the ALJ cited "*DOT 208.685-026*" for the photocopying machine operator job, but that code number corresponds to "Sealing and Canceling Machine Operator"[12] — an occupation that was not identified by the VE as one claimant could perform.[13] Accordingly, the court will not consider the photocopying machine operator job when determining whether the ALJ's decision denying benefits is supported by substantial evidence.

With respect to the remaining jobs identified by the VE — *i.e.*, marker, non-

---

> (1) If we find that you cannot do your past relevant work because you have a severe impairment(s) (or you do not have any past relevant work), we will consider the same resideual functional capacity assessment we made under paragraph (e) of this section, together with your vocational factors (your age, education, and work experience) to determine if you can make an adjustment to other work. If you can make an adjustment to other work, we will find you not disabled. If you cannot, we will find you disabled.

20 C.F.R. § 404.1520(g) (internal citation omitted).

[12] *See Dictionary of Occupational Titles* (4th ed. 1991), 1991 WL 671757.

[13] The correct DOT code number for photocopying machine operator is 207.685-014. *See Dictionary of Occupational Titles* (4th ed. 1991), 1991 WL 671745.

postal mail clerk, and inserting machine operator — claimant contends that his residual functional capacity precludes him from each, due to the requirements of balancing, stooping, crouching, kneeling, and crawling. As support, he contends that reference should be made to the Occupational Information Network ("O*Net"), developed by the United States Department of Labor,[14] to ascertain the physical requirements of each identified job.

According to the Social Security Administration website:

> The Department of Labor (DOL) developed the DOT in the late 1930s to match jobseekers to jobs. For almost 50 years, the DOT has been our primary source for occupational information. The DOL discontinued updating the DOT in 1991 and replaced it in 1998 with another job placement tool, the Occupational Information Network (O*Net). *We studied whether O*Net could take the DOT's place in our disability adjudication process but found it does not describe the physical requirements of occupations at the level of detail needed for claims adjudication.*

*Occupational Information System Project FAQ's*, https://www.ssa.gov/disability research/ois_project_faqs.html (last visited Feb. 12, 2025) (emphasis supplied). There is no date given for replacement of the woefully outdated Dictionary of Occupational Titles for the adjudication of disability claims, although at one point it

---

[14] "The O*Net system is maintained by a regularly updated database of occupational characteristics and worker requirements information across the U.S. economy. It describes occupations in terms of the knowledge, skills, and abilities required, as well as how the work is performed in terms of tasks, activities, and other descriptors." *O*Net*, https://www.dol.gov/agencies/eta/onet (last visited Feb. 12, 2025).

7

apparently was anticipated to be operative during 2020. *See Chavez v. Berryhill*, 895 F.3d 962, 965 (11th Cir. 2018) ("The agency has announced that it anticipates replacing the DOT with the Occupational Information System in 2020."). In any event, as stated above, the Social Security Administration has rejected use of O*Net for adjudication of claims. Moreover, the regulations do not mention O*Net as a source of reliable data, but specifically state that the Commissioner will take administrative notice of the DOT. *See* 20 C.F.R. § 404.1566(d)(5); *Tisdale v. Commissioner of Social Security*, 806 F. App'x 704, 711 (11th Cir. 2020). Accordingly, claimant's arguments based upon the activity requirements found in O*Net must fail.

The court still must consider whether the conflict between the ALJ's RFC determination and the VE testimony requires remand. Accordingly, it is necessary to review the activity requirements for the remaining positions (excluding the photocopying machine operator job, as discussed *supra*) identified by the VE — marker, non-postal mail clerk, and inserting machine operator — in order to ascertain whether claimant is precluded from performing those jobs based upon the ALJ's more restrictive RFC.

DOT code number 209.587-034, corresponding to the position of marker, specifies that the activities of balancing, stooping, kneeling, and crouching are "not

8

present."[15] The same is true for the positions of non-postal mail clerk, DOT code number 209.687-026,[16] and inserting machine operator, DOT code number 208.685-018.[17] Accordingly, so long as there are sufficient jobs in those positions in the national economy, any error by the ALJ in relying on the VE's testimony despite finding a more restrictive RFC is harmless.

The VE testified that there are 262,683 jobs nationally for the job of marker, 55,521 jobs nationally for non-postal mail clerk; and, for inserting machine operator, 2,461 jobs nationally. Notably, the VE testified that, with the additional limitations of *occasional* climbing of ramps and stairs, and *occasional* interaction with co-workers supplied by the ALJ in the second hypothetical question, the number of mail clerk positions would be reduced by at least thirty percent — *i.e.*, to approximately 38,865 jobs. However, the ALJ did not account for that reduction in her opinion, despite including those restrictions in the RFC.

Even so, the court concludes that the errors identified in this opinion were harmless. There are a total of 304,009 remaining jobs available nationally in the marker, non-postal mail clerk, and inserting machine operator occupations. Accordingly, the ALJ's finding that claimant could adjust to other work that exists

---

[15] *Dictionary of Occupational Titles* (4th ed. 1991), 1991 WL 671802.
[16] *Id.*, 1991 WL 671813.
[17] *Id.*, 1991 WL 671755.

in significant numbers in the national economy is supported by substantial evidence. *See*, *e.g.*, *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (upholding an ALJ's finding that jobs that the claimant could perform existed in significant numbers based upon a vocational expert's testimony that 80,000 jobs existed nationwide).

**B.     Hernia Limitations**

Claimant next contends that the ALJ did not properly accord weight to the opinion of Michael Wood, M.D., relating to claimant's limitations because of his hernias, and otherwise discounted evidence in the record relating to their severity.

"For claims filed . . . on or after March 27, 2017," such as claimant's, an administrative law judge must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a) (ellipsis and alteration supplied).  The regulation provides, instead, factors for determining the appropriate weight to medical opinions.  Those factors include: the supportability of the medical opinion; its consistency with other record evidence, the physician's relationship with the claimant; the physician's specialty; and other relevant information.  20 C.F.R. § 404.1520c(c)(1)-(5).

The ALJ evaluated Dr. Wood's opinion as follows:

> The record includes an opinion from Dr. Wood, which is

supported with an explanation and some evidence but is only partially persuasive. Dr. Wood opined that the claimant would need to be lying down, sleeping, or sitting with his legs elevated to waist level or above for three hours of an eight-hour day, due to obesity and hernia. However, physical examination findings do not support significant ongoing edema. In January 2020, the claimant had 1+ edema in his lower extremities, and he denied fluid accumulation in the lower extremities and shortness of breath on exertion. Additionally, treating physicians recommended before and after the claimant's first hernia repair that he would be limited to lifting no more than twenty pounds until six weeks post-op. Dr. Wood also opined, however, that the claimant would not miss any days of work and or [*sic*] be off task, which is consistent with the evidence with regard to absences from work and off-task behavior.

R. 69 (internal citations omitted). While this analysis lacks clarity, the ALJ gave adequate reasons for discounting Dr. Wood's opinion that claimant would need to lie down, sleep, or sitting with his legs elevated for three hours of an eight-hour day. Contrary to claimant's contention, the ALJ did not attribute this restriction solely to edema. Instead, she considered Dr. Wood's opinion in light of other positional limitations in the record relating to claimant's hernia, as well as the portion of Dr. Wood's opinion that claimant would not be absent from work or be off task despite his impairments. Therefore, she complied with the requirements of 20 C.F.R. § 404.1520c.

Likewise, the ALJ adequately explained her reasons for assessing the severity of claimant's hernias. She thoroughly addressed the medical evidence relating to the

hernias. She noted that medical records showed that his pain was relieved by ibuprofen and Tylenol, and that he was treated conservatively with an abdominal binder for symptoms caused by his hernias.[18] The court concludes that the ALJ's finding with respect to the severity of claimant's hernias was supported by substantial evidence.[19]

## C.   *Harner v. Social Security Administration, Commissioner*, 38 F.4th 892 (11th Cir. 2022)

Finally, claimant argues that the decision of the Eleventh Circuit in *Harner* should be overruled in light of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). In *Harner*, the Eleventh Circuit relied upon *Chevron, U.S.A, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to hold that promulgation of 20 C.F.R. § 404.1520c, discussed *supra*, was within the scope of the Commissioner's authority, and was not arbitrary and capricious. 38 F.4th at 896. The Supreme Court overruled the *Chevron* case in *Loper Bright*. 603 U.S. at 412. Even so, claimant concedes that this court is bound by *Harner*.[20] *See id.* (By overruling *Chevron*, "we do not call into question prior cases

---

[18] R. 65.

[19] To the extent that claimant's reply brief raises additional arguments with respect to the ALJ's evaluation of the severity of the symptoms caused by claimant's hernias, those arguments will not be considered. *See Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned.").

[20] Doc. no. 24 (Plaintiff's Opening Brief), at 31.

that were decided by the *Chevron* framework.).  Accordingly, no further discussion of the issue is necessary.

For all of the foregoing reasons, this court concludes that the ALJ's decision regarding claimant's disability was supported by substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is due to be affirmed.  A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this 18th day of February, 2025.

_____
Senior United States District Judge